FILED

2013 Feb-25  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **MARK D. DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-12-S-2402-NW** |
| | ) | |
| **GILBERT PORTERFIELD SELF,** | ) | |
| ***et al.,*** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDERS

This action grew out of child custody and support proceedings in the Tennessee and Alabama court systems between Mark Davis, who sues as a *pro se* plaintiff, and his former wife, Tonya Smith Davis (now known as Blackstock), who is the mother of the child that has become the innocent, collateral casualty of their, seemingly, never-ending marital warfare. The amended complaint filed by plaintiff contains five counts alleging violations of plaintiff's constitutional rights and of state law. The gravamen of the 59-page, 308-paragraph pleading is that Alabama's state courts lack subject-matter jurisdiction over the child custody and support disputes between plaintiff and his former wife.[1] The thirteen persons named as defendants reside in Alabama, and plaintiff alleges that they have conspired to uphold and enforce the,

---

[1] Plaintiff reiterates that contention more than three dozen times. *See, e.g.*, doc. no. 6 (Amended Complaint) ¶¶ 10, 12, 13, 15-27, 34, 46, 51-53, 64-65, 98, 102, 108, 133, 135, 144, 149, 150-51, 167, 184-85, 196, 237, 238, 242-43, 245, 250, 271-72, 274, 290, 297, and 301.

purportedly, unlawful decisions of the Alabama courts.[2]   In addition to **Tonya Blackstock** — who, as noted above, is plaintiff's former wife and the mother of the child at the center of the dispute — the other persons named as defendants are: **Brenda K. Baker**, the mother of Tonya Blackstock; **Gilbert Porterfield Self**, a Circuit Judge in Lauderdale County, Alabama (the State's 11th Judicial Circuit); **Ned Michael Suttle**, a retired Lauderdale County Circuit Judge; **Terry A. Moore**, one of the five Judges sitting on the Alabama Court of Civil Appeals; **Dr. Robert J. Bentley**, Governor of the State of Alabama; **Nancy T. Buckner**, Commissioner of the Alabama Department of Human Resources; **Cynthia L. Bratcher**, Director of the Lauderdale County Department of Human Resources; **Chris Connolly**, District Attorney of Lauderdale County; **Robert F. Smith**, an Assistant Lauderdale County District Attorney; **Stacey Bryant Hooper**, another Assistant Lauderdale County District Attorney; **Melinda Morgan Austin**, an attorney engaged in the private practice of law in Lauderdale County; and **Lindsey Mussleman Davis**, another private attorney in Lauderdale County.[3]   Plaintiff seeks monetary damages from each of the foregoing defendants, as well as injunctive and declaratory relief.   The

---

[2] *See id.* ¶¶ 11, 13, 36, and 290.

[3] *Id.* ¶¶ 15-27.

following opinion addresses motions to dismiss filed by all of the defendants.[4]

## I.  STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6), which permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted," must be read together with Rule 8(a)(2), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*, 550 U.S.] at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*  Where a complaint pleads

---

[4] *See* doc. no. 16 (Motion to Dismiss by Gilbert Porterfield Self, Ned Michael Suttle, and Terry A. Moore); doc. no. 18 (Motion to Dismiss of defendants Robert J. Bentley, Cynitha L. Bratcher, Nancy T. Buckner, Chris Connolly, Stacey Bryant Hooper, and Robert F. Smith); doc. no. 21 (Motion to Dismiss by Melinda Morgan Austin and Lindsey Mussleman Davis); doc. no. 34 (Motion to Dismiss Amended Complaint by Brenda K. Baker); and doc. no. 35 (Motion to Dismiss Amended Complaint by Tonya Blackstock Smith).  In addition, the following motions also are pending:  doc. no. 22 (Motion to Dismiss Original Complaint by Brenda K. Baker); doc. no. 23 (Motion to Dismiss Original Complaint by Tonya Blackstock Smith); and doc. no. 51 (Motion for Preliminary Injunction and Emergency Hearing by Mark D. Davis).

facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

A.   **Acceptance of the Plaintiff's Factual Allegations,** *as distinguished from* **His Conclusions of Law**

When ruling upon motions to dismiss, the district court is required to assume that the facts set forth in a plaintiff's complaint are true. *See*, *e.g.*, *id.*; *Twombly*, 550 U.S. at 570; *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*). On the other hand, a court need not accept as either true or correct the legal conclusions that may be asserted in a complaint. *Iqbal*, 556 U.S. at 678-79.

B.   **Consideration of Matters Outside the Pleadings**

The procedural history of this controversy is lengthy and complex. Given that fact, and the quality of plaintiff's *pro se* complaint, this court has found it necessary to supplement the facts stated by plaintiff with publically-available copies of court opinions, and some of the 265 pages of exhibits that plaintiff filed as attachments to his original complaint.[5] As a consequence, it might at first appear that Federal Rule of Civil Procedure 12(d) requires this court to treat the motions to dismiss as ones for

_____

[5] *See* doc. nos. 1-1, 1-2 & 1-3 (Exhibits A, B, and C to Original Complaint).

summary judgment.  That Rule provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d) (2012).  Even so, there are several circumstances in which a court may consider matters outside the pleadings when ruling upon a 12(b)(6) motion to dismiss, and not formally convert the motion to one for summary judgment.  *See*, *e.g.*, *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (observing that there are some circumstances in which "the usual rules for considering 12(b)(6) motions are . . . bent").

One circumstance allowing deviation from Rule 12(d) occurs when, as in the present case, copies of documents are attached to a plaintiff's complaint.  *Id*. ("Ordinarily, the full text of [a document] would not be part of the record under review for a dismissal under Fed. R. Civ. P. 12(b)(6) *unless it was attached to the complaint*.") (alteration and emphasis supplied) (*citing* 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356, at 590-92 (1969)); *see also Hoffman-Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002) (permitting reference to a document referenced in the complaint and central to plaintiff's claims); *Brooks v. Blue Cross and Blue Shield of Florida*, 116 F.3d 1364, 1368 (11th Cir. 1997)

(observing that 12(b)(6) motions are "limited primarily to the face of the complaint *and attachments thereto*") (emphasis added).

Another circumstance allowing deviation from the requirement to convert a 12(b)(6) motion to one for summary judgment is when facts are subject to being judicially noticed. *See* Fed. R. Evid. 201(a)-(d) (judicial notice); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (permitting consideration of judicially noticed matters and documents incorporated into the complaint by reference); *La Grasta v. First Union Securities*, *Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (noting that, when "analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, *and matters judicially noticed* ") (emphasis supplied); *see also*, *e.g.*, *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (permitting consideration of judicially noticed matters and documents incorporated into the complaint by reference).

Furthermore, "a court ordinarily may treat documents from prior state court adjudications as public records." *Boateng v. InterAmerican University*, *Inc.*, 210 F.3d 56, 60 (1st Cir. 2000) (holding that "a court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment") (citing *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994)).

6

## II. PROCEDURAL HISTORY

The history of proceedings in the state courts of Tennessee and Alabama leading to the commencement of the present action is lengthy and complex. The following discussion constitutes this court's best effort at ironing out the wrinkles in the convoluted state court pleadings.

### A. Tennessee Proceedings

Plaintiff and defendant Tonya Blackstock married on November 11, 2000, but separated just four months later. They were residing in the State of Tennessee on the date of their separation. Plaintiff's wife then was pregnant with a child. On some date that is not disclosed in the record, Ms. Blackstock commenced divorce proceedings against plaintiff in the Chancery Court for Lawrence County, Tennessee. Before that court ruled on her petition, however, both parties moved to Alabama, where Ms. Blackstock gave birth to a child, a daughter named Katie Nichole Davis, on December 27, 2001. Plaintiff disputed his paternity of the child, and a DNA test was conducted on February 11, 2002. The Tennessee Chancery Court's decree of divorce was entered just four days later, however, on February 15, 2002, before the results of that test were known. Accordingly, the court found that the child born during the parties' marriage was "the natural child of the father and holds such until

7

or unless a pending DNA test result proves otherwise."[6]   In view of all that has transpired since that decree was entered, it is reasonable to presume that the DNA test results confirmed that plaintiff is the biological father of Katie Nichole Davis.

The Tennessee trial court's decree ratified a "Permanent Parenting Plan" that had been mutually agreed upon by both parents, and under the terms of which the mother was awarded primary physical custody of the child, subject to certain visitation rights reserved to the plaintiff/putative father.[7]   Plaintiff also was ordered to pay $545 a month in child support to the mother.[8]

Four months later, in June of 2002, while both parties and the child continued to reside in Alabama, plaintiff petitioned the Tennessee Chancery Court for a modification of the custody provisions of its February 15, 2002 decree.   On September 3rd of the following year, the Tennessee court modified its original decree by awarding *equal physical custody* to both parents, and terminating plaintiff's child support obligation.   The pertinent parts of the September 3, 2003 modification order read as follows:

> 3.     The court finds that *both parties are in agreement that the*

---

[6] *See* doc. no. 1-1, at ECF 10 (Ex. A to Original Complaint (*Davis v. Davis*, No. 10543-01, slip op. at 1 (Chancery Ct. for Lawrence Co., Tenn. Feb. 15, 2002))) (emphasis supplied); *see also id*. at ECF 11 (slip op. at 2, ¶ 3) (same).

[7] *Id*. at ECF 13-14 (slip op. at 4-5: "II.  RESIDENTIAL SHARING SCHEDULE").

[8] *Id*. at ECF 11 (slip op. at 2, ¶ 4).

*previous Parenting Plan as it is not* [sic] *in the best interest of the minor child*.

4.     The court further finds that a modification is warranted and that it has considered the young age of the child, the stability of her relationship with both parents and the court notes that both parents are willing and able to care for and address the child's needs with regard to her physical, emotion [sic] and mental condition.

5.     The court further finds that there is a lack of communication between the parties that is detrimental to the child and is not in the child's best interest.

6.     The court has noted that the best interest of the child in a situation is served by a parenting arrangment which best maintains a child's emotional growth, health, stability and physical care.  The court notes there is a fundamental importance of the parent/child relationship to the welfare of the child and each parent and that said relationship should be fostered unless inconsistent with the child's best interest.  *This being held, the court finds the child should be with each parent on a four day rotating schedule* (see attached Parenting Plan listed as Exhibit 1).

. . . .

9.     The court finds that this matter may be reviewed at any time upon motion of either of the parties.

10.     *The court further finds that as the child will be staying 50% of the time with each parent thus there will be no child support from either parent.*

11.     The court further finds that there will be no holiday schedule as each parent will have the child every four days.  The court does find that it will expect the parties to be cooperative with regard to holidays, birthdays and family outings and that both parents will be cooperative and compromising with regard to trading days, again doing

what is in the best interest of the child.[9]

Tonya Blackstock appealed the modification order to the Middle Division of the Tennessee Court of Appeals at Nashville.  A little over one year later, on October 12, 2004, the appeals court affirmed the trial court's decision in part, but also reversed it in part.[10]   Specifically, the appellate court *affirmed* that part of the modification order making both parents *equal residential/physical custodians* based upon "abundant evidence" that the mother had "refused to adhere to the plain requirements" of the parenting plan incorporated into the original decree of divorce.[11] On the other hand, the Court of Appeals *reversed the termination of plaintiff's child support obligation*, and remanded the case to the trial court "for a timely hearing consistent with" a decision that had been handed down by the Tennessee Supreme

---

[9] *Id*. at ECF 18-19 (Ex. A to Original Complaint (*Davis v. Davis*, No. 10543-01, slip op. at 1-2 (Chancery Ct. for Lawrence Co., Tenn. Sept. 3, 2003))) (emphasis supplied).

[10] *See* doc. no. 1-1, at ECF 41-47  (Ex. A to Original Complaint (*Davis v. Davis*, No. M2003-02312-COA-R3-CV (Tenn. Ct. App. Oct. 12, 2004))).

[11] In pertinent part, the Tennessee Court of Appeals held that:

> A parent's failure to adhere to the requirements of a permanent parenting plan can be considered a material change in circumstances.  Tenn. Code Ann. § 36-6-101(a)(2)(B) (Supp. 2003).  *This record contains abundant evidence that Ms. Smith has refused to adhere to the plain requirements of the parenting plan and that she has purposely and deliberately embarked on a course, which, if not stopped, would eventually erode the relationship between Mr. Davis and Katie*.  Accordingly, we find that the trial court's conclusion that the circumstances had changed materially following the divorce is amply supported by the record.

*Id*. at ECF 44 (slip op. at 4) (emphasis supplied); *see also id*. at 47 (slip op. at 7) ("We affirm the portion of the judgment granting the parents equal residential time.").

Court on September 27th of the previous month:  *i.e.*, *Hopkins v. Hopkins*, 152 S.W.3d 447 (Tenn. 2004).[12]

Prior to the *Hopkins* decision, Tennessee courts generally had held that only "the primary residential parent" — *i.e.*, *the parent with whom the child resided more than fifty percent of the time* — was entitled to receive child-support payments.  *See*, *e.g.*, *Gray v. Gray*, 78 S.W.3d 881, 884 (Tenn. 2002).[13]  The *Hopkins* opinion addressed another, more narrow issue:  *that is*, the question of "whether child support may be awarded when *neither party* has been designated *the primary residential parent*," and held that the lower court in that case had erred "in awarding child support to one party when neither party was designated the primary residential parent."  *Hopkins*, 152 S.W.3d at 448 (emphasis supplied).  The *Hopkins* opinion remanded that case "to the trial court for the designation of a primary residential parent, [and] for the consideration of the amount of child support to be paid . . . ."  *Id*. (alteration supplied).

The most important aspect of the *Hopkins* decision for purposes of the divorce-

---

[12] *Id*. ("We vacate the portion of the judgment terminating Mr. Davis's child support obligation and remand the case for a timely hearing consistent with *Hopkins v. Hopkins* and this opinion.  Neither party shall have an obligation to pay child support unless the trial court, following a hearing, determines that child support is warranted.").

[13] *See also id*. at ECF 45 (slip op. at 5) (observing that the Tennessee Court of Appeals had, on at least two previous occasions, held that neither parent was entitled to receive child support when "(1) neither parent [was] designated as the primary residential parent and (2) the residential schedule grant[ed] the parent equal parenting time" (alterations supplied) (citations omitted)).

decree modification proceedings between plaintiff and his former wife lay in the fact that the Tennessee Supreme Court "decline[d] to adopt a bright-line rule that no child support is owed when a child's residential time is divided equally between the parents." *Id*. at 449 (alteration added).  Accordingly, and "despite the practical difficulties" that the Tennessee Court of Appeals predicted would "surely follow in [the] wake" of the *Hopkins* decision,[14] that Court held that the Lawrence County, Tennessee Chancery Court had

> erred first by failing to designate either Mr. Davis or Ms. Smith as the primary residential parent and second by basing its child support decision solely on the fact that the parents had equal residential time. *We, therefore, vacate the portion of the trial court's final order regarding child support and remand the case to the trial court with directions to* designate a primary residential parent and to *address the question of child support* as required by the [decision in] *Hopkins v. Hopkins*.[15]

The mandate and judgment of the Tennessee Court of Appeals were docketed in the Chancery Court for Lawrence County, Tennessee, on December 22, 2004.[16] The Chancery Court took note of the intermediate appellate court's decision on January 7, 2005,[17] *but subsequently failed to act on the mandate to designate a*

---

[14] *Id*. at ECF 47 (slip op. at 7) (footnote omitted).

[15] *Id*. (emphasis and alteration supplied).

[16] *Id*. at ECF 39 (Mandate) and 40 (Judgment).

[17] *See* doc. no. 1-1, at ECF 38 (Ex. A to Original Complaint (*Davis v. Davis*, No. 10543-01, slip op. at 1 (Chancery Ct. for Lawrence Co., Tenn. Jan. 7, 2005))); *see also Ex parte Davis*, 82 So. 3d 695, 701 (Ala. Civ. App. 2011); *Davis v. Blackstock*, 47 So. 3d 796, 797 (Ala. Civ. App. 2007).

*primary residential parent, and to reconsider the question of child support.*

That court's unfortunate — and, frankly, inexplicable — failure to act in response to a direct order of a superior court precipitated a series of proceedings in the Alabama court system that has led to the present action in this court.

**B**.    **The Alabama Proceedings**

One year after the mandate and judgment of the Tennessee Court of Appeals were docketed in the Chancery Court for Lawrence County, Tennessee, but not acted upon, the dispute between Mark Davis and Tonya Blackstock shifted to Alabama. Ms. Blackstock filed a petition seeking modification of the custody and support provisions of the Tennessee decree in the Circuit Court of Lauderdale County, Alabama on February 6, 2006.[18]  She asked the Alabama court to award her *primary physical custody* of the child (an alteration of the September 3, 2003 Tennessee modification order making both parents equal residential/physical custodians), and, to order plaintiff to pay her child support (the issue left unresolved by the failure of the Tennessee trial court to act on the mandate of the Court of Appeals).[19] Blackstock's petition was assigned to defendant Ned Michael Suttle, then serving as a Judge on the Lauderdale County, Alabama, Circuit Court bench.

---

[18] *See* doc. no. 1-1, at ECF 7-9 (Ex. A to Original Complaint (*Blackstock v. Davis*, No. DR 2006-86.01, Lauderdale Co., Ala. Cir. Ct. (Feb. 6, 2006 Petition for Modification))).

[19] *Id*.

Plaintiff filed a motion to dismiss Blackstock's petition on March 3, 2006,
arguing that Alabama courts lacked subject-matter jurisdiction.[20]   Judge Suttle
initially agreed with plaintiff and, on March 20th, granted his motion to dismiss.[21]
Two days later, Ms. Blackstock filed a motion for reconsideration, arguing that the
Tennessee trial court had relinquished jurisdiction through its failure to act on the
mandate and judgment of the Tennessee Court of Appeals.[22]   Judge Suttle granted

---

[20] *Id*. at ECF 36-38 (Motion to Dismiss for Lack of Subject-Matter Jurisdiction).  As the
Alabama Court of Civil Appeals later reported, the plaintiff/father also responded to the mother's
Alabama petition for modification of the Tennessee judgment by filing a petition for a custody
hearing in the Chancery Court for Lawrence County, Tennessee on February 23, 2006.  *Davis v.
Blackstock*, 47 So. 3d 796, 797 (Ala. Civ. App. 2007) ("*Davis I* ").  Thus, at one point, counter-
petitions were pending in the courts of both states.

> Both parties filed motions to dismiss the other's petition on the ground of lack of
> subject-matter jurisdiction.  The mother argued that the Tennessee trial court no
> longer had jurisdiction over the custody issue because the father, the mother, and the
> child had resided in Alabama for the preceding four years. [*See* doc.  no. 1-1, at ECF
> 54-56 (Ex. A to Original Complaint (*Davis v. Davis*, No. 10543-01, Chancery Ct. for
> Lawrence Co. Tenn. (Blackstock's Motion to Dismiss)))]  The father argued that the
> Alabama trial court could not exercise jurisdiction because the Tennessee court was
> continuing to exercise its jurisdiction.  The Alabama trial court granted the father's
> motion to dismiss, but it set aside its dismissal order after the mother alleged that the
> Tennessee trial court had yielded jurisdiction to Alabama as a more convenient forum
> and had dismissed the father's custody-hearing petition.

*Id*. at 797-98 (footnote omitted).  In the omitted footnote, the Alabama Court of Civil Appeals
observed that "[t]he alleged order of the Tennessee trial court dismissing the father's petition and
yielding jurisdiction to the Alabama trial court was not reduced to writing at the time the father
brought this appeal.  Hence, the record does not contain the alleged order, and we cannot consider
this allegation as proven for purposes of this appeal."  *Id*. at 798 n.1 (alteration supplied).

[21] *See* doc. no. 1-1, at ECF 48 (Ex. A to Original Complaint (*Blackstock v. Davis*, No. DR
2006-86.01, Lauderdale Co., Ala. Cir. Ct. (Mar. 20, 2006 order))).

[22] *Id*. at ECF 50-53 (Mar. 22, 2006 Motion to Set Aside Order and Objection to Motion to
Dismiss); *see also id*. at ECF 58-59 (portion of an April 7, 2006 pleading filed by Blackstock in
opposition to the plaintiff-father's motion to dismiss for lack of subject-matter jurisdiction).

14

Blackstock's motion for reconsideration and, on April 10, 2006, overruled plaintiff's motion to dismiss.[23]

The parties proceeded to a custody hearing in the Lauderdale County Circuit Court and, on September 1, 2006, Judge Suttle entered a judgment maintaining the parents' *joint legal custody*, but awarding Ms. Blackstock *primary physical custody*, subject to visitation rights granted to plaintiff.  He also ordered plaintiff to pay to the mother $469 a month in child support, and one-half of any uninsured medical expenses incurred by their child.[24]

Plaintiff appealed Judge Suttle's ruling to the Alabama Court of Civil Appeals, which rendered a decision on June 29, 2007.  The opinion was authored for the five judges comprising the Court of Civil Appeals by defendant Judge Terry A. Moore.

---

[23] *Id*. at ECF 60 (Apr. 7, 2006 order).

[24] *Id*. at ECF 76-78 (Sept. 1, 2006 order modifying the Tennessee decree).  *See also Davis I*, 47 So. 3d at 798:

> The parties proceeded to a custody hearing in the Alabama trial court.  At the hearing, the father requested that the mother be held in contempt for failing to abide by the Tennessee trial court's September 3, 2003 judgment; he also requested that he be awarded primary physical custody of the child.  The mother denied that she was in contempt and requested that she be awarded primary physical custody of the child. Following *ore tenus* proceedings, the Alabama trial court entered a judgment on September 1, 2006.  The Alabama trial court's judgment maintained joint legal custody, but it awarded the mother primary physical custody of the child and awarded the father visitation.  The Alabama trial court further ordered the father to pay child support and to pay one-half of the uninsured-medical expenses of the child.  The judgment also provided the father a credit of $1,338.93 to be applied to his share of the child's uninsured-medical expenses.

15


*See Davis v. Blackstock*, 47 So. 3d 796 (Ala. Civ. App. 2007) ("*Davis I* ").[25]  The Court rejected plaintiff's contention that Alabama's courts lacked subject-matter jurisdiction over the Tennessee child custody provisions, and gave the following reasons for that conclusion:

> The father first argues that the Alabama trial court did not have jurisdiction to modify the custody order entered on September 3, 2003, by the Tennessee trial court.  The father bases his argument on two different grounds:  1) that the Tennessee trial court still had jurisdiction over the custody dispute because it had not yet acted on the mandate from the Tennessee Court of Appeals[;] and 2) that under Tennessee's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("the Tennessee UCCJEA"), the Tennessee trial court had continuing exclusive jurisdiction over the custody issue.

> As to the first argument, the father is correct that the Tennessee trial court had not yet acted on the mandate of the Tennessee Court of Appeals; *however*, *the father fails to recognize that the mandate did not concern the custody dispute.  The Tennessee Court of Appeals affirmed the modification of the custody arrangement and remanded the case solely for the purpose of having the Tennessee trial court determine which parent should be designated the primary residential parent for the purpose of determining child support.  Thus, the issue of custody had been finally determined and was not before the Tennessee trial court on remand*.

> At the time the mother filed her custody-modification petition in the Alabama trial court, there was no simultaneous custody proceeding pending in the Tennessee trial court that could have had any effect on the subject-matter jurisdiction of the Alabama trial court.  *See* Ala. Code 1975, § 30-3B-206.  Hence, and considering further the father's failure

---

[25] Three of the other four judges of the Court (Thompson, P.J., and Pittman and Thomas, JJ.) concurred in the judgment; Judge Bryan concurred in the result "without writing."  *See Davis I*, 47 So. 3d at 801.

to cite any legal authority to support this position, *see* Rule 28(a)(10), Ala. R. App. P., we reject the father's argument that the Alabama trial court did not have subject-matter jurisdiction because the Tennessee trial court had yet to act on the mandate of the Tennessee Court of Appeals.

The father next asserts that the Tennessee trial court had exclusive, continuing jurisdiction over the custody issue pursuant to Tenn. Code Ann. § 36-6-217, a part of the Tennessee UCCJEA.  That statute provides, in pertinent part:

> "(a) . . . [A] court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
>
> > "(1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; *or*
> >
> > "(2) A court of this state *or a court of another state determines that the child*, *the child's parents*, and any person acting as a parent *do not presently reside in this state*."

The father argues that because the Tennessee trial court did not make a determination under subsection (a)(1), it retained exclusive, continuing jurisdiction over the matter.  *However*, *the father overlooks the fact that the Tennessee statute* (and the corresponding Alabama statute) *provide alternative bases for terminating a court's exclusive, continuing jurisdiction*.  *Under subsection (a)(2), the Tennessee trial court loses continuing*, *exclusive jurisdiction once a court of another state determines that the child*, *the child's parents*, and any person acting as

a parent *no longer* "presently" *reside in Tennessee. The father concedes that all relevant parties resided in Alabama at the time the mother filed her petition in the Alabama trial court. See Peterson v. Peterson*, 965 So. 2d 1096, 1099 (Ala. Civ. App. 2007) ("Continuing, exclusive jurisdiction under § 30-3B-202(a) is determined on the basis of the circumstances existing on the date a petition seeking a modification of a [ ] . . . prior custody determination is filed."); *see also* § 30-3B-202, Ala. Code 1975, Official Comment ("Jurisdiction attaches at the commencement of a proceeding.").

Although the Alabama trial court did not make an express finding that the father, the mother, and the child all resided in Alabama, it denied the father's motion to dismiss for lack of subject-matter jurisdiction based, in part, on the mother's factual assertion that all relevant parties had resided in Alabama since 2001. Hence, the Alabama trial court at least impliedly determined that none of the relevant parties resided in Tennessee. *That finding is supported by substantial evidence contained in the record. Consequently, the Tennessee trial court no longer retained exclusive, continuing jurisdiction over the custody issue at the time the mother filed her custody-modification petition in the Alabama trial court.*

Having rejected both of the father's arguments, we find that the Alabama trial court did not err by exercising jurisdiction over the mother's petition to modify custody.

*Davis I*, 47 So. 3d at 798-99 (first alteration added, all other alterations in original) (all emphasis supplied) (footnotes omitted).

The Court then addressed the question of whether Ms. Blackstock had demonstrated a material change in the circumstances that had existed between the parties on the date that the Chancery Court for Lawrence County, Tennessee modified the parties' custody arrangement, "which change of circumstances is such as to affect

18

the welfare and best interest of the child" and, thereby, justify Judge Suttle's order modifying custody. *Id*. at 800 (quoting *Morgan v. Morgan*, 964 So. 2d 24, 34 (Ala. Civ. App. 2007) (other citations omitted)).

The Court of Civil Appeals reviewed the evidence presented during the trial court's hearing, and concluded that Ms. Blackstock had failed to meet her evidentiary burden.    Accordingly,  the  Court  reversed  Judge  Suttle's  modification  of  the September 3, 2003 Tennessee custody decree, and remanded the case to the trial court for reconsideration of the issue of child support. *Davis I*, 47 So. 3d at 801 ("Our reversal of the trial court's judgment with regard to custody will necessarily impact the child-support award.  Therefore, we remand this case for the Alabama trial court to reconsider its child-support award in light of this opinion.").

Ms. Blackstock appealed that decision and, fourteen months later, in a decision entered on September 11, 2009, the Alabama Supreme Court reversed the Court of Civil Appeals. *Ex parte Blackstock*, 47 So. 3d 801 (Ala. 2009) (*per curiam*) ("*Davis II* ").

The  Alabama  Supreme  Court  agreed  that  the  Circuit  Court  of  Lauderdale County possessed subject-matter jurisdiction and, therefore, the power to consider modification of the 2003 Tennessee custody decree. *See id*. at 803 n.1 & 813.  Even so, the Court held that the Alabama Court of Civil Appeals had applied an incorrect

19

standard of review to Judge Suttle's findings of fact. *Id*. at 804-13. Accordingly, the case was remanded to the Court of Civil Appeals for reconsideration, consistent with the Supreme Court's opinion. *Id*. at 814.

Plaintiff sought review in the Supreme Court of the United States, but his petition for writ of *certiorari* was summarily denied on October 4, 2010. *Davis v. Blackstock*, __ U.S. __, 131 S. Ct. 127 (2010).

Following remand to the Alabama Court of Civil Appeals, that Court entered an opinion on April 2, 2010, affirming Judge Suttle's trial court decision granting Ms. Blackstock primary physical custody. *Davis v. Blackstock*, 47 So. 3d 816 (Ala. Civ. App. 2010) ("*Davis III* ").[26] The intermediate appellate court then addressed the issue of child support, and reversed the Lauderdale County trial judge, because a calculation error had caused Judge Suttle to overestimate the amount of child support plaintiff owed to Ms. Blackstock.[27] That issue was remanded to the trial court with

---

[26] Once again, defendant Judge Terry Moore authored the opinion for the entire Court.

[27] *See Davis III*, 47 So. 3d at 817, where the Court of Civil Appeals observed that:

> Based on the parties' incomes, the trial court determined the basic child-support obligation to be $540. The trial court then added child-care costs of $364, resulting in a $904 total child-support obligation. The father's percentage share of the parties' income is 48.13%, and the mother's percentage share is 51.87%. Therefore, the mother's share of the $904 total child-support obligation is $469, and the father's share is $435. *It appears that the trial court inadvertently ordered the father to pay the amount of child support that, according to its calculations, the mother would have been obligated to pay had the father been awarded primary physical custody of the child.* Thus, we conclude that the trial court's award of child support is in error. [Emphasis supplied.]

20

instructions to "recalculate the father's child-support obligation in accordance with Rule 32 [of the Alabama Rules of Judicial Administration] and this opinion." *Id*. at 817 (alteration supplied).

By the time the case returned to the Circuit Court of Lauderdale County, Judge Suttle apparently had retired, because the controversy was reassigned to defendant Judge Gilbert Porterfield Self.   Further, the Alabama Department of Human Resources filed a notice in the trial court stating that Tonya Blackstock had assigned her rights to child support for the parties' child to the Child Support Unit of the Lauderdale County Department of Human Resources, and that "[a]ll collections should be made to the Alabama Child Support Payment Center . . . and be disbursed by the Department of Human Resources."[28]

Defendant Robert F. Smith, an Assistant District Attorney for Lauderdale County, Alabama, filed a motion on behalf of the Child Support Collection Unit of the Alabama Department of Human Resources on September 13, 2010, asking the court to set the case for a status conference.[29]  Judge Self entered an order scheduling

---

[28] Doc. no. 1-2, at ECF 8 (Ex. B to Original Complaint (*Blackstock v. Davis*, No. DR 2006-86.01 (Jul. 12, 2010 Notice to Collect))).

[29] *Id*. at ECF 9 (Sept. 13, 2010 Motion to Set for Status Conference).  Strangely, defendant Smith did not file a notice that he was appearing for the limited purpose of collecting child support on behalf of the State DHR until the following month. *See id*. at ECF 11 (Oct. 13, 2010 Notice of Appearance for Limited Purpose).

the conference for October 12, 2010.[30]

On November 10, 2010, however, before the case was again tried in the Circuit Court, plaintiff filed a motion for modification of the custody provisions of Judge Suttle's September 1, 2006 judgment.[31]  He argued that the 2006 judgment violated his constitutional rights, and that a material change in circumstances had occurred since the entry of the 2006 judgment which justified a modification of custody.  He also asked the court to protect the parties' child from inappropriate conduct that allegedly was occurring in the mother's home.

Following a hearing that addressed only the issues on remand from the Alabama Court of Civil Appeals — and not the questions raised in plaintiff's motion for modification of the 2006 judgment — Judge Self entered a judgment on November 18, 2010.  That judgment corrected the calculation error that resulted in plaintiff being ordered to pay more in child support than he should have, based upon his income,[32] and, determined that plaintiff had accumulated a child support arrearage

---

[30] *Id*. at ECF 10 (Sept. 21, 2010 Order).

[31] As the Alabama Court of Civil Appeals subsequently noted in a decision discussed below, plaintiff's November 10, 2011 motion "was filed in case no. DR–06–86.01, which is the same case number that was assigned to the mother's original action. Subsequently, on March 3, 2011, the father filed a document entitled "Notice to Supplement the Record" in which he stated that he had attempted to pay a filing fee in the clerk's office of the Alabama trial court but had been informed that no filing fee was required."  *Ex parte Davis*, 82 So. 3d 695 (Ala. Civ. App. 2011) ("*Davis IV*").

[32] *See supra* note 27 and accompanying text; *see also* doc. no. 1-2, at ECF 12 (Ex. B to Original Complaint (*Blackstock v. Davis*, No. DR 2006-86.01, Lauderdale Co., Ala. Cir. Ct. (Nov. 18, 2010 Order, ¶ 2) ("The father's child support obligation is presently set at $435.00 per month and

22

in the aggregate amount of $16,560.31.[33]

Ms. Blackstock answered plaintiff's November 10th motion to modify the custody provisions of Judge Suttle's 2006 judgment on November 23, 2010. Plaintiff amended his motion on December 27, 2010.

Then, on February 25, 2011 — *before the trial court addressed and disposed of plaintiff's amended motion to modify* — plaintiff filed a lengthy "Motion to Vacate *Ab Initio*" Judge Suttle's 2006 judgment.[34]   In essence, the motion asked for reinstatement of the September 3, 2003 decree of the Chancery Court for Lawrence County, Tennessee, awarding equal physical custody to both parents, and terminating plaintiff's obligation to pay child support.   Yet again, plaintiff asserted that Alabama's courts lacked subject-matter jurisdiction.   That contention was based, in part, upon the allegation that Ms. Blackstock had not complied with various provisions of the Uniform Interstate Family Support Act ("UIFSA"), Ala. Code § 30–3A–101 *et seq*., and the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA"), Ala. Code § 30–3B–101 *et seq*.   Plaintiff's prayer for relief read as

---

the father is directed to pay same on a monthly basis beginning November 1, 2010.")));

[33] *Id.* ¶ 1 ("The court finds that the father is in arrears with regard to payment of child support and that as of October 12, 2010, the husband is in arrears $14.246.00 plus $2,314.13 in accumulated interest.  The court does hereby enter judgment in favor of the mother and against the father in the sum of $16,560.31 for which due execution may issue.").

[34] *See* doc. no. 1-2, at ECF 26-42 (Ex. B to Original Complaint (*Blackstock v. Davis*, No. DR 2006-86.01, Lauderdale Co., Ala. Cir. Ct. (Feb. 25, 2011 Motion to Vacate Ab Initio).

23

follows:

**WHEREFORE PREMISES CONSIDERED**, as substantial justice requires, and the Father has a clear legal right to the relief requested, the Father moves the Court for the following immediate relief:

A. To immediately vacate and dismiss the void September 1, 2006 Order. The Mother has never had standing to bring this cause in the State of Alabama. The Alabama Courts have never had subject matter jurisdiction because: (1) The Mother's first pleading was not verified. (2) The Mother's first pleading was not made under oath. (3) The Mother's first pleading did not apprise the Court of pending proceedings that could affect the current proceedings. (4) The Mother's first pleading did include a Petition to Register the Tennessee order as a foreign judgment; and, (5) Alabama Court's have not complied with their duty to fully investigate the lack of subject matter jurisdiction prior to acting in this cause that was first brought to the Court's attention in the Father's first pleading on March 3, 2006. Since the Alabama Court's have acted without subject matter jurisdiction, the Court's attention must also be directed to the Mother's affidavit showing that she provided willful factual mis-representations calculated to mislead the Court during the custody action. See attached Exhibit "I".

B. To immediately reinstate the 2003 Tennessee judicial determination.

C. Other such and further relief the Father and Child may be so entitled.[35]

On March 3, 2010, during the pendency of plaintiff's "Motion to Vacate *Ab Initio*," he filed a pleading entitled "Notice to Supplement the Record" that stated:

---

[35] *Id*. at ECF 40-41. Ms. Blackstock responded to plaintiff's motion to vacate on February 28, 2011. Plaintiff filed a reply to the mother's response on March 3, 2011.

24

"The attached 'Notice of Complaint' is set out as if set forth herein is [sic] a notice to supplement the record in the above styled cause."[36]  There then followed a 23-page "Notice of Complaint,"[37] purporting to assert claims against the following entities and persons named as defendants in the caption of the proposed complaint:

> THE STATE OF ALABAMA; Acting by and through various State Actors, (known and unknown), including, not limited to, the following: LAUDERDALE COUNTY DEPARTMENT OF HUMAN RESOURCES; THE ALABAMA DEPARTMENT OF HUMAN RESOURCES; THE UNIVERSITY OF NORTH ALABAMA; FAMILY CONNECTIONS; ROBERT BENTLEY, a State Actor in his individual and official capacity as Governor of the State of Alabama; SUE BELL COBB, a State Actor in her individual and official capacity as Chief administrative Officer for the State of Alabama Judiciary; LUTHER STRANGE, a State Actor in his individual and official capacity as Attorney General of the State of Alabama; BEN BROOKS, as a State Actor in his individual and official capacity as Co-Chairman of Senate Judiciary Committee for the State of Alabama; CAM WARD, as a State Actor in his individual and official capacity as Co-Chairman of Senate Judiciary Committee for the State of Alabama; PAUL DeMARCO, as a State Actor in his Individual and official capacity as Chairman of the House Judiciary Committee for the State of Alabama; PAUL BUSSMAN, as a State Actor in his Individual and official capacity as Senate Chairman of the Children, Youth Affairs and Human Resources

---

[36] *Id*. at ECF 43.

[37] *See id*. at ECF 46, ¶ 1 ("This is a Notice of Complaint giving required Notice to Defendant's [sic] of Plaintiff's intent to take legal action against them for relief under the Civil Rights Act of 1871 (42 U.S.C. § 1983), also including, but not limited to, the following: 28 U.S.C. § 1343; 42 U.S.C. § 1981, 42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 1987, 18 U.S.C. § 241, 18 U.S.C. § 242 and 28 U.S.C. § 2201 for declaratory and injunctive relief; to prohibit the State of Alabama, State Agencies, Officers, and other individual persons named herein from further capriciously, arbitrarily and willfully continuing violations to Plaintiff's civil rights and constitutional rights protected by the U.S. and Alabama constitutions.  Defendants are various state Actors employed in various capacities by the State of Alabama acting officially, acting individually, acting alone or acting in concert with others.").

Committee for the State of Alabama; JACK WILLIAMS, as a State Actor in his individual and official capacity as House or Representatives Chairman of Children and Senior Advocacy Committee for the State of Alabama; MELINDA MORGAN AUSTIN, as a State Actor, in her individual and official capacity as a State Actor; LINDSEY MUSSLEMAN DAVIS, as a State Actor, in her individual and official capacity as a State Actor; NANCY BUCKNER, as a State Actor, in her individual and official capacity as State Commissioner for the State of Alabama Department of Human Resources; JUDITH K. SHELTON, as a State Actor, in her individual and official capacity as case worker for Lauderdale County Department of Human Resources; ROBERT F. SMITH, as a State Actor, in his individual and official capacity as Assistant District Attorney for Lauderdale County Alabama; ROBERT D. YOUNG, as a State Actor, in his individual and official capacity as a State Actor; BRENDA K. BAKER, as a State Actor, in her individual and official capacity as a State Actor; MYRA CARTER, as a State Actor, in her individual and official capacity as Social Worker for the Lauderdale County Department of Human Resources, and as a social worker for Family Connections; TONYA D. BLACKSTOCK, individually, conspiring with State Actors; UNNAMED STATE ACTORS, #1, #2, #3, #4, #5, #6, #7, #8, #9, #10 as State Actors, in their individual and official capacity as Unnamed State Actors; UNNAMED STATE ACTORS #11, #12, #13, #14, #15, individually as Unnamed State Actors.[38]

In substance, plaintiff alleged many of the same claims and arguments in his "Notice of Complaint" as he later did in the complaint filed in this court: *e.g.*, the Alabama courts lack subject matter jurisdiction over the custody and child support

---

[38] *Id.* at ECF 44-46 (all spelling and punctuation in original). Many of the persons and entities named as defendants in the caption of plaintiff's "Notice of Complaint" also were sued in the action pending in this court, although the foregoing "Notice of Complaint" also names and asserts claims against various members of the Alabama Legislature, as well as former Chief Justice of the Alabama Supreme Court, Sue Cobb Bell, and Attorney General Luther Strange. *See id.* at ECF 49-52, ¶¶ 22-33 & 17-22 [sic].

determinations made in the September 3, 2003 decree of the Chancery Court for Lawrence County, Tennessee; despite that "fact" (as plaintiff sees it), all manner of private and state actors have conspired to uphold the purportedly illegal judgments of Alabama's state courts; and, consequently, plaintiff's rights under the United States and Alabama Constitutions have been violated.  Plaintiff demanded that all defendants "cease and desist" violating his rights, and warned that, if they did not immediately comply, defendants could "jeopardize [their] governmental immunity."[39] He asserted his belief that the participation of the Alabama Supreme Court in establishing child support guidelines violated the separation of powers,[40] and demanded that the Alabama Legislature, the Governor, the U.S. Department of Justice, and the U.S. Department of Health and Human Services investigate the defendants.[41]  All of those themes were captured in plaintiff's prayer for relief:

> **WHEREFORE PREMISES CONSIDERED, the PLAINTIFF'S** [sic] **requests the following**:
>
> A.    For the State of Alabama and State Actors, (named and unnamed), to immediately cease and desist in violating the constitutional errors of law subject to this complaint.
>
> B.    For the State of Alabama and State Actors, (named and unnamed), to immediately restore Plaintiff's civil and constitutional rights

---

[39] *Id.* at ECF 48-49, ¶¶ 14-18 (alteration supplied).

[40] *Id.* at ECF 57-58, ¶¶ 59-68.

[41] *Id.* at ECF 54, ¶¶ 37-39.

that were correctly safeguarded by the State of Tennessee.

C.      For the <u>Alabama Legislative Branch, both the House and Senate,
        to Investigate this Complaint</u> and take appropriate steps to stop
        future abuses by State Actors from abusing their position of
        authority in violating civil rights and constitutional rights of
        Alabama citizens.

D.      For the <u>Governor of the State of Alabama to investigate this
        Complaint</u> and take appropriate steps to stop future abuses by
        State Actors from abusing their position of authority in violating
        civil rights and constitutional rights of Alabama citizens.

E.      For the <u>Federal government to investigate this Complaint</u> and
        sanction the State of Alabama for not honoring civil rights and
        constitutional rights of Alabama Citizens to which the State of
        Alabama accepts federal funding.

F.      Other such, further and general relief Plaintiff's [sic] are
        entitled.[42]

Judge Self denied plaintiff's "Motion to Vacate *Ab Initio*" on March 4, 2011:

*i.e.*, the day after plaintiff filed the foregoing "Notice of Complaint."[43]

Plaintiff responded to Judge Self's denial of his motion by filing a petition for

writ of mandamus on March 8, 2011, thus bringing the case before the Alabama Court

of Civil Appeals for the second time.[44]   Judge Self stayed the trial court's

consideration of all issues on March 14, 2011, pending the disposition of plaintiff's

---

[42] *Id*. at ECF 64 (all emphasis in original).

[43] *Id*. at ECF 66 (Mar. 4, 2011 Order Denying Motion to Vacate *Ab Initio*).

[44] *Ex parte Davis*, 82 So. 3d 695, 699 (Ala. Civ. App.  2011) ("*Davis IV* ").

28

mandamus petition by the appellate court.

On March 16, 2011, plaintiff also filed a motion to set aside Judge Self's November 18, 2010 judgment establishing the amount of plaintiff's child support arrearage.  Ms. Blackstock responded to that motion on March 18, 2011.  On March 22, 2011, the Alabama Court of Civil Appeals — operating under the mistaken belief that the trial court's November 18, 2010 judgment had been entered in a separate action initiated by plaintiff, *see Ex parte Davis*, 82 So. 3d 695, 699 & nn.1-2, 700 (Ala. Civ. App. 2011) ("*Davis IV*") — entered an order stating that plaintiff's petition for writ of mandamus would be treated as an appeal from the denial of a motion under Alabama Rule of Civil Procedure 60(b)(4).  On March 25, 2011, Judge Self entered an order stating that plaintiff's motion to set aside the trial court's November 18, 2010 order would be held in abeyance, pending the appellate court's decision.

The Alabama Court of Civil Appeals mercifully put an end (at least temporarily) to the flurry of pleadings in the Circuit Court for Lauderdale County on October 7, 2011, when it rendered the following opinion:

> Initially, we note that, when this court elected to treat the father's petition for a writ of mandamus as an appeal, we did not have the benefit of having the entire clerk's record before us.  Now that we do, we conclude that there is no final judgment from which the father could have appealed and, thus, that we may not treat the father's petition as an appeal.  *See*, *e.g.*, *Smith v. Pendergrass*, 741 So. 2d 423, 424 (Ala. Civ. App. 1999) ("An appeal ordinarily lies only from a final judgment. . . .

An order is generally not final unless it disposes of all claims or the rights or liabilities of all parties.").  Thus, we must determine whether the father has shown that a petition for writ of mandamus should be issued.

The father first argues that the Alabama trial court lacked subject-matter jurisdiction to enter the 2006 judgment. "[S]ubject-matter jurisdiction may not be waived; a court's lack of subject-matter jurisdiction may be raised at any time by any party and may even be raised by a court *ex mero motu*." *C.J.L. v. M.W.B.*, 868 So. 2d 451, 453 (Ala. Civ. App. 2003).

> """A writ of mandamus is an extraordinary remedy, and it 'will be issued only when there is:  1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.'""

> "*Ex parte Monsanto Co*., 862 So. 2d 595, 604 (Ala. 2003) (quoting *Ex parte Butts*, 775 So. 2d 173, 176 (Ala. 2000), quoting in turn *Ex parte United Serv. Stations, Inc*., 628 So. 2d 501, 503 (Ala. 1993)).  '[T]he question of subject matter jurisdiction is reviewable by a petition for a writ of mandamus.'  *Ex parte Johnson*, 715 So. 2d 783, 785 (Ala. 1998).  'Although this Court reviews a mandamus petition to determine whether the trial court exceeded its discretion, this Court reviews issues of law *de novo*.'  *Ex parte Terry*, 957 So. 2d 455, 457 (Ala. 2006)."

*Ex parte Berry*, 999 So. 2d 883, 885 (Ala. 2008).

The father specifically argues that the mother failed to comply with the registration requirements of § 30–3A–602, Ala. Code 1975, a

part of the UIFSA, and § 30–3B–305, Ala. Code 1975, a part of the UCCJEA.  Section 30–3A–602 of the UIFSA sets forth the procedure a litigant must follow in order to register a foreign child-support judgment.   Only strict compliance with that registration procedure confers subject-matter jurisdiction upon an Alabama circuit court to enforce or to modify a foreign child-support judgment.  *See Mattes v. Mattes*, 60 So. 3d 887 (Ala. Civ. App. 2010); and *Ex parte Owens*, 65 So. 3d 953 (Ala. Civ. App. 2010).   The father notes that, when the mother filed her February 6, 2006, action seeking child support, she did not register the September 3, 2003 judgment of the Tennessee trial court with the Alabama trial court.   The father overlooks a salient point, however.  At the time the mother filed the 2006 action, the Tennessee trial court had not entered any child-support judgment.  Although the Tennessee Court of Appeals had ordered the Tennessee trial court to consider awarding child support, the record indicates that the Tennessee trial court had not acted on that mandate and had not actually entered any judgment requiring either party to pay child support.  Hence, the 2006 action cannot be construed as a petition to enforce or to modify a foreign child-support judgment.  Rather, it can only be considered a petition to establish child support under Alabama law.  Accordingly, § 30–3A–602 does not apply, and the mother's alleged failure to comply with that statute does not bar the Alabama trial court from assuming subject-matter jurisdiction as to the issue of child support.

Section 30–3B–305 sets out the procedure to be followed to register foreign child-custody "determination[s]."  Until that procedure is followed, an Alabama court does not gain subject-matter jurisdiction to enforce the foreign child-custody determination at issue.  *Cf. Garrett v. Williams*, 68 So. 3d 846, 848 (Ala. Civ. App. 2011).  However, in her 2006 action the mother did not seek to have the Tennessee child-custody determination enforced; to the contrary, she sought to have that determination *modified* so as to give her primary physical custody of the child.  *By its plain terms, the registration requirements established in § 30–3B–305 apply solely to enforcement, not modification, actions. Subject-matter jurisdiction to modify a foreign child-custody determination is instead governed by § 30–3B–203, Ala. Code 1975, which does not condition modification jurisdiction on registration of the*

31

*prior foreign child-custody determination.   In short, under §
30–3B–203, an Alabama trial court may modify a foreign child-custody
determination without the judgment containing that determination first
being registered in accordance with § 30–3B–305.*   Therefore, the
Alabama trial court did not lack subject-matter jurisdiction to modify the
custody of the child based on the alleged failure of the mother to register
the Tennessee judgment containing a child-custody determination.  *As
this court and our supreme court have already determined, the Alabama
trial court properly exercised subject-matter jurisdiction over the
child-custody-modification portion of the action pursuant to §
30–3B–203.*

The father also argues that the Alabama trial court failed to
comply with Ala. Code 1975, § 30–3B–206, which provides:

> "(a)  Except as otherwise provided in Section
> 30–3B–204, [Ala. Code 1975,] a court of this state may not
> exercise its jurisdiction under this article if, at the time of
> the commencement of the proceeding, a proceeding
> concerning the custody of the child has been commenced
> in a court of another state having jurisdiction substantially
> in conformity with this chapter, unless the proceeding has
> been terminated or is stayed by the court of the other state
> because a court of this state is a more convenient forum
> under Section 30–3B–207[, Ala. Code 1975].

> "(b)  Except as otherwise provided in Section
> 30–3B–204, a court of this state, before hearing a child
> custody proceeding, shall examine the court documents and
> other information supplied by the parties pursuant to
> Section 30–3B–209[, Ala. Code 1975].   If the court
> determines that a child custody proceeding has been
> commenced in a court in another state having jurisdiction
> substantially in accordance with this chapter, the court of
> this state shall stay its proceeding and communicate with
> the court of the other state.   If the court of the state having
> jurisdiction substantially in accordance with this chapter

32

does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding.

"(c) In a proceeding to modify a child custody determination, a court of this state shall determine whether a proceeding to enforce the determination has been commenced in another state.  If a proceeding to enforce a child custody determination has been commenced in another state, the court may:

"(1) Stay the proceeding for modification pending the entry of an order of a court of the other state enforcing, staying, denying, or dismissing the proceeding for enforcement;

"(2) Enjoin the parties from continuing with the proceeding for enforcement; or

"(3) Proceed with the modification under conditions it considers appropriate."

As noted previously, however, at the time the mother filed her petition for modification in the Alabama trial court, the issue of custody had been finally resolved in the Tennessee action.  *Davis I*, 47 So. 3d at 798.  Thus, the requirements of § 30–3B–206 were not triggered.

The father further contends that the Alabama trial court lacked subject-matter jurisdiction because, he says, the mother did not comply with the information requirements of § 30–3B–209(a), Ala. Code 1975.[45]  We note, however, that subsection (b) of that Code section

_____

[45] A footnote at this point in the opinion of the Alabama Court of Civil Appeals sets out the text of Alabama Code § 30-3B-209(a) as follows:

"Except as otherwise provided in subsection (e), in a child custody proceeding, each party, in its first pleading or in an attached affidavit, shall give information, if

33

provides: "If the information required by subsection (a) is not furnished, the court, upon motion of a party or its own motion, may stay the proceeding until the information is furnished." Based on the plain reading of § 30–3B–209(b), it is clear that the failure to comply with § 30–3B–209(a) does not deprive a trial court of subject-matter jurisdiction; rather, it is a defect that may be cured upon motion of any party or on the trial court's own motion. The father also maintains that the Alabama trial court failed to comply with § 30–3B–112(a)(4), Ala. Code 1975.[46] We note, however, that the language of that Code section

---

reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period. The pleading or affidavit must state whether the party:

     "(1) Has participated, as a party or witness or in any other capacity, in any other proceeding concerning the custody of or visitation with the child and, if so, identify the court, the case number, and the date of the child custody determination, if any;

     "(2) Knows of any proceeding that could affect the current proceeding, including proceedings for enforcement and proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions, and, if so, identify the court, the case number, and the nature of the proceeding; and

     "(3) Knows the names and addresses of any person not a party to the proceeding who has physical custody of the child or claims rights of legal custody or physical custody of, or visitation with, the child and, if so, the names and addresses of those persons."

*Davis IV*, 82 So. 3d at 702 n.6.

   [46] A footnote at this point in the opinion of the Alabama Court of Civil Appeals sets out the text of Alabama Code § 30-3B-112(a) as follows:

   "A court of this state may request the appropriate court of another state to:

     "(1) Hold an evidentiary hearing;

     "(2) Order a person to produce or give evidence pursuant to procedures of that state;

34

makes it clear that it is permissive by stating that "[a] court of this state *may*" take certain actions.   (Emphasis added.)   Thus, we find no jurisdictional defect in that regard.

The father finally argues that the Alabama trial court's custody judgment violated his fundamental parenting rights.  We note, however, that this argument does not implicate the Alabama trial court's subject-matter jurisdiction; rather, it is an attack on the trial court's application of custody law.  *See, e.g.*, *Neal v. Neal*, 856 So. 2d 766, 781 (Ala. 2002) (stating that the appellant "confuse[d] legal error with want of subject-matter jurisdiction or want of due process of law" and noting: "'The simple fact that a court has erroneously applied the law does not render its judgment void.' " (quoting *Halstead v. Halstead*, 53 Ala. App. 255, 256, 299 So. 2d 300, 301 (1974))).  Because the father's final two arguments do not implicate the Alabama trial court's subject-matter jurisdiction[,] and because the father has not otherwise demonstrated the necessity of extraordinary relief, we conclude that neither of the father's final two arguments is a proper basis for mandamus relief.  *See, e.g.*, *Ex parte Empire Fire & Marine Ins. Co.*, 720 So. 2d 893, 894 (Ala. 1998) ("A writ of mandamus will issue only in situations where other relief is unavailable or is inadequate, and it cannot be used as a substitute for appeal.").

Based on the foregoing, we deny the father's petition for a writ of mandamus.

---

"(3) Order that an evaluation be made with respect to the custody of a child involved in a pending proceeding;

"(4) Forward to the court of this state a certified copy of the transcript of the record of the hearing, the evidence otherwise presented, and any evaluation prepared in compliance with the request; and

"(5) Order a party to a child custody proceeding or any person having physical custody of the child to appear in the proceeding with or without the child."

*Davis IV*, 82 So. 3d at 703 n.7.

The requests by the mother and the father for the award of attorney fees in this appellate proceeding are denied.

PETITION DENIED.

*Ex parte Davis*, 82 So. 3d 695, 700-03 (Ala. Civ. App. 2011) (emphasis added, some footnotes omitted) ("*Davis IV*").

Despite the foregoing rejection of plaintiff's petition for writ of mandamus by the Court of Civil Appeals, he remained unfazed.  Plaintiff asked the Alabama Supreme Court to issue the writ, but that Court summarily denied his petition.  *See Ex parte Davis*, No. 1110073, slip op. at 1 (Ala. Nov. 15, 2011) ("The petition for a writ of mandamus to be directed to the Alabama Court of Civil Appeals, having been duly filed and submitted to the Court, IT IS ORDERED that the petition for a writ of mandamus is denied.").

Defendant Lindsey Mussleman Davis filed a motion on behalf of Ms. Blackstock with the Lauderdale County Circuit Court on January 23, 2012, asking that the case be set for trial.

> As a basis for said motion, undersigned shows unto the court that this case has been affirmed both by the Alabama Court of Civil Appeals with a Certificate of Judgment being issued on October 26, 2011[,] and by the Supreme Court of Alabama with a Certificate of Judgment being issued on November 15, 2011.[47]

---

[47] *Blackstock v. Davis*, No. DR 2006-86.01 (Lauderdale Co., Ala. Cir. Ct. Jan. 23, 2012) (Motion to Set) (alteration supplied).

36

Judge Self ruled that he would hold the motion in abeyance, pending the disposition of plaintiff's second appeal to the United States Supreme Court.[48]

Plaintiff filed copies of his Supreme Court brief with the Lauderdale County Circuit Court on February 13, 2012.[49]  Lindsey Mussleman Davis appeared in the Supreme Court on behalf of all respondents to plaintiff's petition for *certiorari*, and waived respondents' right to respond.[50]  The Supreme Court summarily denied plaintiff's petition on April 16, 2012.[51]

During the period between November 15, 2011 (when the Alabama Supreme Court denied plaintiff's petition for writ of mandamus), and April 16, 2012 (when the United States Supreme Court denied his petition for writ of *certiorari*), plaintiff also filed a "Motion to Take Judicial Notice" in the Circuit Court of Lauderdale County.[52] That motion relied on *Williams v. Williams*, 91 So. 3d 56 (Ala. Civ. App. 2012), a February 24, 2012 opinion that also had been authored for the Court of Civil Appeals by defendant Judge Terry Moore.  The substance of plaintiff's motion is set out

---

[48]  *Blackstock v. Davis*, No. DR 2006-86.01, slip op. at 1 (Lauderdale Co., Ala. Cir. Ct. Jan. 27, 2012) (Order Holding Motion in Abeyance).

[49]  *Id.* (Feb. 13, 2012 Notice and Copies of Briefs).

[50]  Doc. no. 1-3, at ECF 107-108 (Ex. C to Original Complaint (Mar. 8, 2012 Waiver of Response to Petition for Writ of Certiorari))).

[51]  *Davis v. Blackstock*, __ U.S. __, 132 S. Ct. 1926 (Apr. 16, 2012).

[52]  *See* doc. no. 1-3, at ECF 55-56 (Ex. C to Original Complaint (*Blackstock v. Davis*, No. DR 2006-86.01 (Lauderdale Co., Ala. Cir. Ct. Mar. 16, 2012) (Motion to Take Judicial Notice))).

below:

      1. On February 24, 2012, the Court of Civil Appeals released Wiliams v. Williams, [Ms. No. 2100944] direct on point to the case at bar.   The Williams Court concluded that an issuing (out of) state judgment that does not Order child support to either parent, but Orders provisions for health care, is a child support judgment.   See the Uniform Interstate Family Support Act (UIFSA), Ala. Code 1975, § 30-3A-I0l et seq., specifically see § 30-3A-101(22).   The UIFSA strictly mandates that a previously issued state court child support judgment must be properly registered in Alabama.   See § § 30-3A-602, 30-3A-609, 30-3A-613.   Absent proper UIFSA registration Alabama judgments are void for want of subject matter jurisdiction.   See Williams, Supra.

      2. On October 7, 2011 the Court of Civil Appeals in Ex parte Mark D. Davis [2100515] erred when it said the Plaintiff was not required to properly register the Tennessee judgment in Alabama — in accordance to the UIFSA.   Just like in Williams, the Tennessee judgment did not Order child support payable to either parent, however, the Tennessee judgment Ordered health care provisions.   See § 30-3A-101(22).   It is apparent on the face of the record the September 1, 2006 judgment does not comply with strict UIFSA mandates.

      3. A judgment is subject to collateral attack for lack of jurisdiction if a jurisdictional defect is apparent on the face of the record.   Balboa Ins. Co. v. Sippial Elec. Co., 379 So.2d 579, at 867 (Ala. 1980).   If the judgment is void, it must be set aside.   Seventh Wonder v. Southbound Records, Inc., 364 So.2d 1173, at 1174 (Ala.1978).

      4. Respondent moves the Court to take judicial notice of Williams v. Williams, and the significant unequal and misapplication of UIFSA law as applied herein.[53]

As in the present case, the procedural history of the *Williams* controversy was

---

[53] *Id.* at ECF 55.

lengthy. *Id.* at 58-59. The crux of *Williams*, however, was that an Alabama trial court had modified a Missouri divorce judgment, despite the failure of the parties to register that judgment in Alabama in accordance with the Uniform Interstate Family Support Act ("UIFSA"), Ala. Code 1975, § 30–3A–101 *et seq*. *Id.* at 58-59, 60-61. *Williams* affirmed the district court's conclusion that it lacked subject-matter jurisdiction, and held that "a foreign child-support order must be registered before an Alabama circuit court obtains subject-matter jurisdiction to modify that order. . . . Because the father did not register the divorce judgment, the trial court lacked subject-matter jurisdiction to enter its 2006 modification judgment." *Id.* at 62. That holding is essentially the conclusion that plaintiff has urged upon each of the Alabama courts in which he has appeared. Plaintiff's frustration likely springs from the fact that the same Judge of the Alabama Court of Civil Appeals authored the opinions of that Court in *Davis I*, *Davis IV*, and *Williams*.

But *Williams* is different from plaintiff's case. Indeed, the *Williams* opinion expressly distinguished the result in that case from the Court of Civil Appeals' previous holding in the controversy between plaintiff and his former wife in the opinion reported as *Ex parte Davis*, 82 So.3d 695, 701 (Ala. Civ. App. 2011) ("*Davis IV*"). As that Court observed, the father in the *Williams* case "sought solely a modification of, not enforcement of, the child-support provisions of the [Missouri]

39

divorce judgment." *Id.* at 60 (alteration supplied, footnote omitted).  The footnote

attached to that statement explained the distinction between the facts in *Williams* and

those presented in *Davis IV* as follows:

> Although the [Missouri] divorce judgment did not order the mother to
> pay regular child support due to her unemployment, *the trial court*
> *concluded that the divorce judgment did award child support by*
> *requiring the mother to pay a share of the children's medical and dental*
> *expenses*.  The father does not dispute that finding.  Hence, *this was not*
> *a case in which a foreign jurisdiction had failed to address child*
> *support* so that *no registration* of the previously entered foreign
> judgment *would have been required*.  *See Ex parte Davis*, 82 So.3d 695,
> 701 (Ala. Civ. App. 2011) [*Davis IV*].

*Id.* at 60 n.3 (alterations and emphasis supplied).

On April 18, 2012, following the United States Supreme Court's denial of

plaintiff's petition for *certiorari*, Lindsey Mussleman Davis filed another motion on

behalf of Tonya Blackstock, asking Judge Self to set the case for trial.[54]  Plaintiff

responded by filing a motion for summary judgment "pursuant to Rule 12(c) and Rule

56" of the Alabama Rules of Civil Procedure on June 28, 2012.[55]  The opening

paragraph of that motion presented plaintiff's now-familiar position:

> This case is before the Court on Blackstock's February 2006 Alabama
> Petition to modify a Tennessee judgment for child support and child
> custody.  Currently, the Petition is pending in the trial court from a

---

[54] *Blackstock v. Davis*, No. DR 2006-86.01 (Lauderdale Co., Ala. Cir. Ct. Apr. 18, 2012)
(Motion to Set).

[55] *Blackstock v. Davis*, No. DR 2006-86.01 (Lauderdale Co., Ala. Cir. Ct. June 28, 2012)
(Motion for Summary Judgment).

> remand of the Alabama Court of Civil Appeals on the child support
> issue as it relates to health care provisions. *The 2006 Petition does not
> comply with* [the] *strict mandates of Alabama law to confer subject-
> matter jurisdiction upon the Alabama courts.*[56]

Both motions were pending on July 9, 2012 — the date on which plaintiff filed the

present action in this court.[57]

## III. FACTS ALLEGED BY PLAINTIFF

The gist of the factual allegations contained in plaintiff's amended complaint

is that the thirteen persons named as defendants have conspired against him at various

times during the proceedings outlined in the previous part of this opinion.[58]  For

example, he alleges that attorney Melinda Morgan Austin, his former wife, Tonya

Blackstock, and his former mother-in-law, Brenda Baker, conspired with each other,

and with Lauderdale County Circuit Judge Suttle, for the purpose of persuading Judge

Suttle to reconsider his initial decision granting plaintiff's 2006 motion to dismiss for

lack of subject-matter jurisdiction;[59] and, following reconsideration, to deny that

motion.[60]  In support of that theory, plaintiff states that Judge Suttle and Melinda

---

[56] *Id.* ¶ 1 (alteration and emphasis supplied).

[57] *See* doc. no. 6 (Amended Complaint) ¶¶ 4, 113, and 26 n.6 (confirming that Ms. Blackstock's motion to set the case for trial, and plaintiff's motion for summary judgment, were both pending on the date this action was commenced).

[58] *See, e.g.*, *id.* ¶¶ 11, 134, 183, 188, 235, and 280.

[59] See the text in the paragraph preceding note 23, *supra*.

[60] *See* doc. no. 6 (Amended Complaint) ¶ 200.

Morgan Austin were members of the same church and "active in local and statewide politics," while other defendants "run in the same close social circles in Florence, Alabama."[61]

Plaintiff also alleges that Ms. Blackstock, Brenda Baker, attorney Lindsey Mussleman Davis, and Assistant Lauderdale County District Attorneys Robert Smith and Stacey Hopper conspired with each other, and with Judge Self,[62] presumably for the purpose of influencing the orders that Judge Self entered on November 18, 2010 (adjudging plaintiff to be in arrears in the payment of child support), and March 4, 2011 (denying plaintiff's "Motion to Vacate *Ab Initio*").

Additionally, plaintiff alleges that his former mother-in-law used her position as Assistant to the President of the University of North Alabama located in Florence, Lauderdale County, Alabama, "to corruptly conspire with and influence" all other defendants except Judge Terry Moore of the Alabama Court of Civil Appeals.[63]  Ms. Baker originally was hired by former University President Robert Potts who, prior to his academic career, was an attorney in the same law firm as Judge Suttle.[64] According to plaintiff, Ms. Baker "has the ability to provide free perks [related to the

---

[61] *Id.* ¶¶ 205, 207, and 211.

[62] *Id.* ¶ 235.

[63] *Id.* ¶ 212.

[64] *Id.* ¶¶ 209-10.

university's football program] to all defendants."[65]

Plaintiff received several notices in the summer of 2010 from the Lauderdale County Department of Human Resources, stating that his child support payments were in arrears, and notifying him that collection proceedings would be initiated.[66] Plaintiff asserts that the state agency took those actions "under the supervision of [defendant Governor Robert] Bentley, [defendant DHR Commissioner Nancy] Buckner, and [defendant Lauderdale County DHR Director Cynthia] Bratcher."[67] Plaintiff mailed letters to each of those defendants in 2010 and 2011, notifying them that — in his opinion — the child support obligation imposed upon him by the Lauderdale County Circuit Court was void, because that court did not possess subject-matter jurisdiction and, therefore, the power to impose such a requirement. He also stated that any attempt to collect the void child support payments would violate his constitutional and civil rights.[68]

Plaintiff also asserts that Alabama Circuit Judges Suttle and Self, as well as Court of Civil Appeals Judge Moore, knew that the Alabama courts lacked subject-matter jurisdiction, despite their repeated judicial findings to the contrary.[69]

---

[65] Doc. no. 6 (Amended Complaint) ¶ 217 (alteration supplied).

[66] *Id.* ¶ 100.

[67] *Id.*

[68] *Id.* ¶¶ 52, 102, 104, 185, 237, 239-40, 243-45, and 273; *see also id.* ¶¶ 51, 53.

[69] *Id.* ¶¶ 184-85.

43

# IV.  DISCUSSION

## A.   Fifth Amendment Claims

Plaintiff's complaint repeatedly refers to claims arising under the Fifth Amendment of the United States Constitution.[70]  Several of the guarantees of the Fifth Amendment apply to the states as a result of their selective "incorporation" into the Due Process Clause of the Fourteenth Amendment.[71]  *See Pennsylvania Central Transportation Co. v. New York City*, 438 U.S. 104 (1978) (right against taking private property for public use without just compensation); *Benton v. Maryland*, 395 U.S. 784 (1969) (right against double jeopardy); *Malloy v. Hogan*, 378 U.S. 1 (1964) (privilege against self-incrimination).  Plaintiff's complaint, however, does not implicate any of those rights.  Instead, plaintiff alleges violations of his rights to due process and equal protection.  The Fourteenth Amendment protects those rights from

---

[70] *Id.* ¶¶ 2, 28, 38, 127, 135, 138, 177, 193, 256, and 263.

[71] It is axiomatic that the first eight amendments to the Constitution were intended to act as restraints upon the exercise of power by the new, *national government*, and not the various states. *Barron v. Baltimore*, 32 U.S. (7 Pet.) 243, 250 (1833) (Marshall, C.J., unanimous opinion) (holding that the first eight amendments "demanded security against the apprehended encroachments of the general government — not against those of the local governments").  Unlike the Bill of Rights, however, the Fourteenth Amendment, adopted in the wake of the Civil War, was restrictive of the exercise of power by *state governments*.  Beginning in 1925, the Supreme Court held in a variety of cases that some of the individual rights protected by the Bill of Rights are also protected against interference by the states by the Fourteenth Amendment's Due Process Clause.  *See Gitlow v. New York*, 268 U.S. 652, 666 (1925) (stating in *dicta* that, for "present purposes we may and do assume that freedom of speech and of the press — which are protected by the First Amendment from abridgement by Congress — are among the fundamental personal rights and 'liberties' protected by the due process clause of the Fourteenth Amendment from impairment by the States").

violation by state governments,[72] whereas the Fifth Amendment protects those rights, among others, from infringement by the *federal* government.[73] *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits *the United States*, as the Due Process Clause of the Fourteenth Amendment prohibits *the States*, from depriving any person of property without 'due process of law.'") (emphasis supplied); *Swisher International, Inc. v. Schafer*, 550 F.3d 1046, 1059 n.13 (11th Cir. 2008) ("[T]he principles of equal protection are applied to the federal government through the Due Process Clause of the Fifth Amendment.").

Because the defendants in this case are either employees or officials of the State of Alabama, or private, non-governmental actors, plaintiff's claims based on the Fifth Amendment are due to be dismissed.

---

[72] The Fourteenth Amendment's Due Process Clause provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const., amend. XIV, § 1 (1868).

[73] The Fifth Amendment to the United States Constitution provides that:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grant Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, *nor be deprived of life, liberty, or property, without due process of law*; nor shall private property be taken for public use, without just compensation.

U.S. Const., amend. V (1791) (emphasis supplied).

B.    **Count I**:  **Injunctive Relief for Constitutional Violations**

Count I alleges violations of plaintiff's First, Fourth, and Fourteenth Amendment rights "by forced operation of a void Alabama judgment."[74]  Plaintiff maintains that he "is subject to all Defendants proceeding with full force of the state on child support enforcement and depriving him of property without due process of law and violating equal protection."[75]  Plaintiff seeks a temporary restraining order and injunction barring "all defendants from depriving [him] of constitutional and civil rights."[76]  Plaintiff asks this court to enjoin the proceedings against him in the Alabama courts — proceedings which, since their inception on February 6, 2006, have been assigned Lauderdale County Circuit Court Civil Action number DR 2006-86.01.[77]

The rub lies in the well-established principle that, since the Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), federal district courts have been clearly instructed that they "must refrain from enjoining pending state court proceedings except under special circumstances." *Old Republic Union Insurance Co. v. Tillis Trucking Co., Inc.*, 124 F.3d 1258, 1261 (11th Cir. 1997).  The *Younger*

---

[74] Doc. no. 6 (Amended Complaint) ¶ 144; *see also id.* ¶¶ 134, 151.

[75] *Id.* ¶ 150.

[76] *Id.* ¶ 176 (alteration supplied).

[77] *See* doc. no. 6 (Amended Complaint) ¶ 6.

abstention doctrine, as it has been called, "derives from 'the vital consideration of comity between the state and national governments,' which *Younger* itself characterized as a 'sensitivity to the legitimate interests of both State and National Governments.'" *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting *Luckey v. Miller*, 976 F.2d 673, 676 (11th Cir.1992), and citing *Younger*, 401 U.S. at 44). "Where vital state interests are involved, a federal court should abstain *unless* state law *clearly* bars the interposition of the constitutional claims." *Id.* (emphasis supplied).

The *Younger* abstention doctrine asks three questions: "first, do the proceedings constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* (quoting *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 432 (1982)). If the answer to those inquiries is "yes," then federal courts must abstain from intervention in the ongoing, state-court proceedings.

Abstention is unequivocally the appropriate course here. Plaintiff admits that the proceedings in Lauderdale County, Alabama, Circuit Court case number DR 2006-86.01 were ongoing at the time he filed his complaint in this court.[78] This court

---

[78] *Id.* ¶¶ 4, 113 n.6.

also has consulted the docket sheet in that case, as well as those parts of the record that the parties have subsequently provided.  After plaintiff was adjudged to be in *further* arrears on August 3, 2012,[79] he filed, on September 14, 2012, yet another appeal to the Alabama Court of Civil Appeals.[80]  That appeal has not been resolved, and the state court docket sheet indicates that plaintiff has filed motions and briefs with the state courts every month from September of 2012 through January of 2013.[81]  In fact, plaintiff filed an "emergency motion" with this court on January 9, 2013, asking this court to enjoin defendant Lauderdale County District Attorney Chris Connolly from proceeding with garnishment in case number DR 2006-86.01.[82]  The state court docket sheet also reveals that plaintiff filed a reply brief in support of his motion to quash the garnishment proceeding on January 31, 2012.  Thus, it is obvious that Lauderdale County, Alabama Circuit Court case number DR 2006-86.01 is an

---

[79] Doc. no. 53, at ECF 12 (Ex. 1, Evidentiary Material in Support of Plaintiff's Motion for a Preliminary Injunction and Emergency Hearing) (*Blackstock v. Davis*, No. DR 2006-86.01, Lauderdale Co. Cir. Ct. (Aug. 3, 2012 Order Finding Plaintiff in Arrears))).

[80] *Id.* at ECF 27-31 (Notice of Appeal of Sept. 14, 2012 to the Court of Civil Appeals of Alabama)

[81] *See, e.g.*, *id.* at ECF 27-31 (Notice of Appeal of Sept. 14, 2012 to the Court of Civil Appeals of Alabama), 36-37 (Motion for Clarification); doc. no. 53-1, at ECF 30 (Ex. 2, Evidentiary Material in Support of Plaintiff's Motion for a Preliminary Injunction and Emergency Hearing) (*Blackstock v. Davis*, No. DR 2006-86.01, Lauderdale Co. Cir. Ct. (Nov. 27, 2012 Confirmation of Brief Filing))); *cf.* doc. no. 53-3, at ECF 1-2 (Ex. 4, Evidentiary Material in Support of Plaintiff's Motion for a Preliminary Injunction and Emergency Hearing) (*Blackstock v. Davis*, No. DR 2006-86.01, Lauderdale Co. Cir. Ct. (Nov. 9, 2012 Order))); *id*. at ECF 3 (Order of Nov. 16, 2012 Order of the Ala. Ct. Civ. App., granting plaintiff's motion).

[82] Doc. no. 51 (Emergency Motion).

48

"ongoing judicial proceeding," and that entertaining the relief requested in Count I of plaintiff's complaint would "directly interfere with" the state court proceedings by barring their continuation.  *See 31 Foster Children*, 329 F.3d at 1276.

Moreover, by contesting the subject-matter jurisdiction of Alabama's courts, plaintiff attacks the "important interests in administering certain aspects of [Alabama's] judicial system" by "challeng[ing] the very process by which [its] judgments were obtained." *Old Republic*, 124 F.3d at 1263 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)) (alterations supplied).

Finally, plaintiff has not met his "burden of establishing that the state proceedings do not provide an adequate remedy for [his] federal claims." *31 Foster Children*, 329 F.3d at 1279 (alteration supplied).  "'Minimal respect for the state processes . . . precludes any presumption that the state courts will not safeguard federal constitutional rights.'  A federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.'" *Id.* (quoting *Middlesex*, 457 U.S. at 431, and citing *Pennzoil*, 481 U.S. at 15).  The only "authority" that plaintiff identifies is his own, lay opinion that the Alabama courts lack subject-matter jurisdiction:  a conclusion that has been rejected repeatedly by judges at every level of the Alabama court system.  Accordingly, Count I is due to be dismissed.

Counts II and III of plaintiff's complaint contain similar claims for declaratory and injunctive relief,[83] all of which are due to be dismissed on the same grounds discussed above.

## C.   Claims for Damages Under 42 U.S.C. § 1983

Count II also contains a claim for money damages: *i.e.*, plaintiff seeks one million dollars from each defendant under 42 U.S.C. § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights.

### 1.   Defendant Judges Suttle, Self, and Moore and the doctrine of judicial immunity

"Judges are entitled to absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the *clear* absence of all jurisdiction.  This immunity applies *even when* the judge's acts are in error, malicious, or[, as plaintiff alleges in this case,] *were in excess of his or her jurisdiction*."  *Sibley v. Lando*, 437 F.3d 1067, 1070 (11th Cir. 2005) (alteration and emphasis supplied).  The question of:

> Whether a judge's actions were made while acting in his judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity.

---

[83] *See* doc. no. 6 (Amended Complaint) ¶ 191 (Count II), ¶¶ 253-54 (Count III).

50

*Id.* Plaintiff admits that Judges Suttle, Self, and Moore were "acting in a judicial capacity [by] entering legal judgments and opinions."[84] The complaint also provides no basis for concluding that defendants' judicial actions were taken in the *clear* absence of all jurisdiction. Thus, the claims against them under § 1983 are due to be dismissed.

"Judges acting in an official judicial capacity are [also] entitled to absolute judicial immunity under Alabama law." *Ex parte City of Greensboro*, 948 So. 2d 540, 542 (Ala. 2006) (alteration supplied). For that reason, plaintiff's state law claims for abuse of process and outrage in Counts IV and V against the judicial defendants are due to be dismissed.

## 2. Defendants Connolly, Smith, and Hooper and the doctrine of prosecutorial immunity

"A prosecutor enjoys absolute immunity from allegations stemming from the prosecutor's function as advocate. Such absolute immunity extends to a prosecutor's acts undertaken in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (quoting *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999)). Although prosecutorial immunity typically applies to prosecutorial

---

[84] *Id.* ¶ 184 (alteration supplied).

functions in the context of criminal proceedings, the Supreme Court has extended

absolute immunity to executive branch officials who appear in civil proceedings as

attorneys, and who "perform[] certain functions analogous to those of a prosecutor."

*Butz v. Economou*, 438 U.S. 478, 515 (1978) (alteration supplied).  Appellate courts

have emphasized a functional approach when "determin[ing] whether executive

branch public officials should be granted absolute immunity for taking particular

actions."  *Hart v. Hodges*, 587 F.3d 1288, 1294-95 (11th Cir. 2009) (alteration

supplied); *see also Burns v. Reed*, 500 U.S. 478, 486 (1991).  Furthermore, under

Alabama law:

> Whenever anyone owing the obligation of support has failed to provide support, and application is made to the department for support services as may be provided pursuant to the requirements of Title IV-D or for aid, the department, *and including the district attorney when providing services for the department*, *may take appropriate action under this article*, or any other appropriate state and federal statutes, to assure that the responsible person or persons owing the obligation of support provide support, *including*, but not limited to, *civil or criminal actions to determine parentage or to establish, modify, or enforce support obligations*. All actions to determine parentage or to establish, modify, or enforce support obligations may be *brought in either the juvenile court or district court or the circuit court or appropriate federal court*[.]

Ala. Code § 38-10-7(a) (1975) (1992 Replacement Vol.) (emphasis supplied).

Additionally, Alabama law defines the scope of the district attorney's

representation in such cases.

> *Any district attorney* . . . initiating legal proceedings at the request of the Department of Human Resources to establish or enforce child support, spousal support, medical support, and/or any other support services . . . shall *represent the State of Alabama,* Department of Human Resources, *exclusively in said proceedings. No attorney-client relationship shall exist between the IV-D attorney and any applicant or recipient of the agency's support enforcement services*, without regard to the style of the case in which legal proceedings are initiated. *Said attorney representing the state* in an IV-D case *is only authorized to appear and prosecute and/or defend issues of support* and cannot in an IV-D case address or provide representation to the IV-D client on any other or ancillary issues raised or presented in that action. The provisions of this section shall apply to any attorney authorized to represent the State of Alabama and providing support enforcement services to the Department of Human Resources, and shall be applicable in any action brought by the department pursuant to Title IV-D of the Social Security Act and the laws of this state.

*Id.* § 38-10-7.1 (emphasis supplied).

The allegations of plaintiff's complaint clearly indicate that defendants Chris Connolly, Robert Smith, and Stacey Hooper acted pursuant to those statutes.[85]  Their attempts to civilly enforce plaintiff's child support obligations were prosecutorial in nature.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity depends on the nature of the function performed); *Butz*, 438 U.S. at 515 (finding absolute immunity in civil proceedings); *see also Schrob v. Catterson*, 948 F.2d 1402, 1412 (3d Cir. 1991) (finding absolute immunity for prosecutor's role as the

---

[85] Doc. no. 6 (Amended Complaint) ¶¶ 20, 24-25, 96, 106, 241-42, and 244; *see also, e.g.*, doc. no. 1-2, at ECF 11 (Ex. B to Original Complaint) (*Blackstock v. Davis*, No. DR 2006-86.01, Lauderdal Co. Ala. Cir. Ct. (Oct. 13, 2010 Notice of Appearance by Robert F. Smith) (citing Ala. Code § 38-10-7.1))).

government's advocate in civil litigation); *Shoultes v. Laidlaw*, 886 F.2d 114, 118 (6th Cir. 1989) (granting absolute immunity for "quasi-prosecutorial" functions in civil cases); *Meade v. Grubbs*, 841 F.2d 1512, 1533 (10th Cir. 1988) (applying absolute immunity for decision to initiate civil enforcement proceedings); *Taylor v. Garcetti*, 55 F. App'x 853, 854 (9th Cir. 2003) (holding that absolute immunity applies to civil enforcement proceedings for child support).

Accordingly, the claims in Count II of plaintiff's complaint against the state prosecutors are due to be dismissed.

### 3. Governor Bentley, Commissioner Buckner, and Director Bratcher and the doctrine of qualified immunity

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007). "An official asserting the affirmative defense of qualified immunity must initially establish that he was acting within his discretionary authority." *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). "If the official was acting within the scope of his discretionary authority . . . the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." *Id.* at 1136-37. "To overcome qualified

immunity, the plaintiff . . . must show that:  (1) the defendant violated a constitutional

right, and (2) this right was clearly established at the time of the alleged violation."

*Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). "When

dealing with claims of qualified immunity, plaintiffs are required to allege facts that

would defeat the claim of qualified immunity with 'some specificity.'" *GJR*

*Investment, Inc. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998).

The specific allegations against Alabama Governor Bentley, State DHR

Commissioner Buckner, and Lauderdale County DHR Director Bratcher all concern

actions taken within their discretionary authority as state employees, namely, as

supervisors at various levels of the Alabama Department of Human Resources.[86]

Therefore, plaintiff must show that those defendants each violated a clearly

established constitutional right.  As the Eleventh Circuit found on facts substantially

similar to those in the present case:

> While plaintiff[] generally assert[s] that these defendants' actions
> violated equal protection and due process, [he] fail[s] to articulate what
> specific rights these defendants violated or to explain how these
> defendants violated those rights. In this case, plaintiff[] fail[s] to allege
> with any specificity facts indicating that these defendants violated a
> constitutional right, *let alone a clearly established constitutional right*.

*Chen ex rel. V.D. v. Lester*, 364 F. App'x 531, 534 (11th Cir. 2010) (*per curiam*)

---

[86] *See*, *e.g.*, doc. no. 6 (Amended Complaint) ¶¶ 18-19, 21, 100, and 108.

(alterations and emphasis supplied). Accordingly, the claims against the DHR defendants in Count II of plaintiff's complaint are due to be dismissed on qualified immunity grounds.

### 4.    Defendants Blackstock, Baker, Davis, and Austin

Plaintiff must show that "the conduct complained of was committed by a person acting under color of state law" in order for his claims against defendants Tonya Blackstock, Brenda K. Baker, and the two private attorneys named as defendants (*i.e.*, Lindsey Mussleman Davis and Melinda Morgan Austin) to succeed. *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1225 (11th Cir. 2006).

> Only in rare circumstances can *a private party* be viewed as a "state actor" for section 1983 purposes. The Eleventh Circuit recognizes three tests for establishing state action by what is otherwise a private person or entity: the public function test, the state compulsion test, and the nexus/joint action test.

*Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (emphasis supplied).

> *The public function test* limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state. *The state compulsion test* limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution. *The nexus/joint action test* applies where the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise.

*Willis v. University Health Services, Inc.*, 993 F.2d 837, 849 (11th Cir. 1993)

56

(emphasis supplied).

The facts alleged in plaintiff's complaint against the four private actors do not satisfy any of the three tests recognized by the Eleventh Circuit. Defendants Davis and Austin are simply private attorneys acting on behalf of their client, defendant Tonya Blackstock, who is a private citizen enmeshed in a bitter custody and child support dispute with her former husband. Plaintiff's complaint offers little factual detail about the actions of any of these defendants, other than the conclusory allegation that they "conspired" against him.[87]  "For purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." *Harvey*, 949 F.2d at 1133.  Plaintiff, therefore, fails to establish that Blackstock, Davis, and Austin are state actors under section 1983.  *Id.*; *see also Schucker v. Rockwood*, 846 F.2d 1202, 1205 (9th Cir. 1988) ("Invoking state legal procedures [to receive arrears due from a divorce decree] does not constitute 'joint participation' or 'conspiracy' with state officials sufficient to satisfy section 1983's state action requirement.") (alteration supplied); *Lester*, 364 F. App'x at 534-35.

Defendant Brenda Baker, the plaintiff's former mother-in-law, is different from the other three private actors.  She is an employee of the State of Alabama by virtue

---

[87] *See*, *e.g.*, *id.* ¶¶ 183, 188, and 200.

of her position with the University of North Alabama.[88]  Even so, plaintiff makes only

generalized and vague allegations of a conspiracy by Baker through the use of her

official position.[89]   Plaintiff does not identify any specific actions by Baker, or

explain how any actions attributed to her deprived him of his constitutional rights.

*See Troupe v. Sarasosta County*, 419 F.3d 1160, 1165 (11th Cir. 2005) ("A § 1983

claim requires proof of an affirmative causal connection between the defendant's acts

or omissions and the alleged constitutional deprivation.").

To the extent that an alleged conspiracy was the cause of the injuries alleged

by plaintiff in Count II of his complaint, therefore, the allegations of the conspiracy

contained in that Count do not satisfy Rules 8 and 12 of the Federal Rules of Civil

Procedure.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atlantic Corp.

v. Twombly*, 550 U.S. 544, 555, 570 (2007).  Thus, Count II is due to be dismissed in

its entirety, as no claims remain against any defendant.

**D**.    **Count III**:  **Conspiracy to Violate Plaintiff's Constitutional Rights**

Count III also contains a claim for conspiracy to violate plaintiff's

constitutional rights, although plaintiff does not specify whether that claim arises

under 42 U.S.C. § 1983, or 42 U.S.C. § 1985(2)-(3).

---

[88] *Id.* ¶ 208.

[89] *See*, *e.g.*, *id*. ¶¶ 212 ("Baker is using her position at UNA to corruptly conspire with and influence" the other defendants), and 217 ("Baker . . . has the ability to provide free perks to all Defendants.").

To establish a claim for conspiracy under § 1983, plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights. The conspiratorial acts must impinge upon the federal right; the plaintiff must prove an actionable wrong to support the conspiracy." *Grider v. City of Auburn*, 618 F.3d 1240, 1260 (11th Cir. 2010); *see also Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002).

Under § 1985(2), plaintiff must allege that two or more people conspired to impede, hinder, obstruct, or defeat the "due course of justice," and that they did so with the intent to deny plaintiff the equal protection of the law. *See Chavis v. Clayton County School District*, 300 F.3d 1288, 1292 (11th Cir. 2002).

Finally, the Eleventh Circuit stated the four elements of a *prima facie* claim based upon § 1985(3) in *Trawinski v. United Technologies*, 313 F.3d 1295 (11th Cir. 2002), as follows:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id*. at 1299.

Regardless of the statutory basis for the claim plaintiff attempted to allege in

59

Count III, the complaint fails to state sufficient facts from which this court can reasonably infer that a conspiracy existed. The Court is littered with "labels and conclusions," "conclusory statements," and "naked assertions devoid of further factual enhancement" regarding the alleged conspiracy. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-80. To the extent that plaintiff did attempt to provide enhanced factual details, the result is a meandering summary of defendants' social and/or political engagements in northern Alabama: *e.g.*, some defendants are members of the same church; others "are active in local and statewide politics," or "run in the same close social circles"; Judge Suttle allegedly recommended Judge Self as his replacement following retirement; and Ms. Baker is friends with a non-defendant local judge who, in turn, is a "close ally" of the former Chief Justice of the Alabama Supreme Court, Sue Bell Cobb.[90]

Such observations do not nudge plaintiff's conspiracy claim across the line from conceivable to plausible. *Twombly*, 550 U.S. at 569. Count III is, therefore, due to be dismissed. *See*, *e.g.*, *Cox v. Mills*, 465 F. App'x 885, 888 (11th Cir. 2012) (affirming Rule 12(b)(6) dismissal of § 1983 and § 1985 claims when the complaint lacked "a sufficient factual basis for the court to proceed toward a finding that [defendant] and the state court judges agreed to violate [plaintiff's] civil rights," and

---

[90] *Id.* ¶¶ 196-226.

"merely point[ed] to instances where" plaintiff believed that the judges favorably disposed of defendant's allegedly improper pleadings) (alterations supplied); *Sibley v. Levy*, 203 F. App'x 279, 280 (11th Cir. 2006) (affirming sanctions after Rule 12(b)(6) dismissal of § 1983 and § 1985 claims based on plaintiff's complaint that he "saw, but did not hear, the substance of a conversation between [defendant] and two Florida appellate court judges in a lounge during a court recess") (alteration supplied).

**E.      Count IV:  Abuse of Process Under Alabama Law**

Count IV contains a claim under Alabama law for abuse of process.[91]  "The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice." *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala. 1998).  "[A]buse of process concerns the wrongful *use* of process *after it has been issued*." *Id.* (alteration supplied, emphasis in original).  It is "the malicious perversion of a regularly issued process to accomplish a purpose whereby a result not lawfully or properly obtainable under it is secured." *Duncan v. Kent*, 370 So. 2d 288, 290 (Ala. 1979).  "Malice" exists when the process is used "for an end not germane" to its issuance. *Willis v. Parker*, 814 So. 2d 857, 866 (Ala. 2001).  Plaintiff's

---

[91] *Id.* ¶ 258.  To the extent that Count IV also contains constitutional claims, the claims are due to be dismissed for the reasons discussed in Part IV(C), *supra*.

complaint fails to allege any facts that would suggest the defendants possessed *any* purpose other than to litigate a custody and child support dispute, much less an *ulterior* purpose:  *i.e.*, some attempt at "coercion to obtain a collateral advantage." *Reynolds v. McEwen*, 416 So. 2d 702, 706 (Ala. 1982).

Plaintiff also has not alleged sufficient facts to support a finding of "malice," or that process had been wrongfully used in the Alabama proceedings.

For all of those reasons, Count IV is due to be dismissed.

**F**.   **Count V**:  **Outrage Under Alabama Law**

Count V alleges a claim under Alabama law for outrageous misconduct by defendants.  "In order to prevail on a tort-of-outrage claim, a plaintiff is required to prove that the defendant's conduct:  (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Soti v. Lowe's Home Centers, Inc.*, 906 So. 2d 916, 919 (Ala. 2005).  The tort is "an extremely limited cause of action," as the Alabama Supreme Court has, thus far, "recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Potts v. Haynes*, 771 So. 2d 1168, 1173 (Ala. 2011).  Even so, that does not necessarily imply that the tort "is viable in only th[ose] three circumstances." *Ex parte Bole*, 103 So. 3d

40, 53 (Ala. 2012) (alteration supplied).  "By far the most significant element, normally dispositive of a plaintiff's prospects of recovery, is that dealing with the nature of the defendant's conduct as being sufficiently outrageous and extreme."  1 Michael L. Roberts & Gregory S. Cusimano, *Alabama Tort Law* § 23.01 (4th ed. 2004).  Such conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Ex parte Bole*, 103 So. 3d at 53.  Plaintiff cannot meet that threshold.  As previously discussed, his conclusory allegations that defendants formed a conspiracy are not sufficient.  *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555, 570.  The "notices" that plaintiff mailed to the defendants informing them of his personal, lay opinion that the judgments against him were "void" amounted to nothing more than his repeatedly rejected contention that the Alabama courts lacked subject-matter jurisdiction.[92]  The fact that defendants ignored plaintiff's notices did not amount to conduct that was "atrocious and utterly intolerable in a civilized society."  In short, there is nothing "extreme and outrageous" about defendants' efforts to litigate issues and seek enforcement of judgments over which all levels of the Alabama court system have found jurisdiction for the last decade.  Count V is due to be dismissed.

---

[92] *See* doc. no. 6 (Amended Complaint) ¶¶ 273-74, and 298.

63

## V.  CONCLUSION AND ORDERS

For the reasons discussed, defendants' motions to dismiss are GRANTED,[93] and all claims asserted by plaintiff against any defendant are DISMISSED with prejudice.  All other pending motions are denied as MOOT.[94]  Costs are taxed to plaintiff.  The Clerk is directed to close this file.

DONE and ORDERED this 25th day of February, 2013.

_____
United States District Judge

---

[93] Doc. no. 16 (Motion to Dismiss by Gilbert Porterfield Self, Ned Michael Suttle, and Terry A. Moore); doc. no. 18 (Motion to Dismiss of defendants Robert J. Bentley, Cynitha L. Bratcher, Nancy T. Buckner, Chris Connolly, Stacey Bryant Hooper, and Robert F. Smith); doc. no. 21 (Motion to Dismiss by Melinda Morgan Austin and Lindsey Mussleman Davis); doc. no. 34 (Motion to Dismiss Amended Complaint by Brenda K. Baker); and doc. no. 35 (Motion to Dismiss Amended Complaint by Tonya Blackstock Smith).

[94] Doc. no. 22 (Motion to Dismiss Original Complaint by Brenda K. Baker); doc. no. 23 (Motion to Dismiss Original Complaint by Tonya Blackstock Smith); and doc. no. 51 (Motion for Preliminary Injunction and Emergency Hearing by Mark D. Davis).